IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) ANGELA STEVENS, as Next Friend to
and on behalf of D.S., a minor,

      Plaintiff,

   v.                     No. 19-cv-637-WPJ-JFJ

(1) BERRYHILL BOARD OF EDUCATION,
(2) BERRYHILL PUBLIC SCHOOLS,
(3) ZACH ARTERBERRY,
(4) LEVI BRADLEY, as Next Friend of T.B., a Juvenile,
(5) MEGAN ENNIS, Individually and in her capacity
as a teacher at Berryhill Public Schools
(6) RONNA TAYLOR, Individually and in her capacity
as a principal at Berryhill Public Schools,
(7) JAMES FOX, Individually and in his capacity
as principal at Berryhill Public Schools,
(8) BRIAN HAILEY, Individually and in his capacity
as an Assistant Principal at Berryhill Public Schools,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court[1] upon motions to dismiss filed on January 14, 2020, by Defendant Independent School District No. 10 of Tulsa County, referred to in the caption as "Berryhill Public Schools"[2] ("School District") (Doc. 13), and Defendants Ronna Taylor, James Fox, and Brian Hailey in their individual and official capacities (collectively "Administrators") (Doc. 14). Having reviewed the parties' arguments, the relevant documents, and the applicable law, the Court finds the Defendant School District's Motion is well-taken, except as to its

---

[1] Chief United States District Court Judge William P. Johnson of the District of New Mexico was assigned this case as a result of the Tenth Circuit Order designating Judge Johnson to hear and preside over cases in the Northern District of Oklahoma.

[2] The School District is hereby directed to file a Form CV-26 Notice of Party Name Correction, available at https://www.oknd.uscourts.gov/forms/civil, within 10 business days after entry of this order.

administrative exhaustion argument, and grants its Motion in part and denies it in part. The Court finds the Defendant Administrators' Motion is well-taken and therefore grants it.

## BACKGROUND[3]

Plaintiff is the adoptive mother of D.S., a minor child who developed stunted growth and learning disabilities after his biological mother habitually used methamphetamine during her pregnancy. Doc. 2, at ¶¶ 17–18. D.S. attended Berryhill Public Schools, located in Tulsa County, Oklahoma. *Id.* at ¶¶ 3, 16. Because of D.S.'s learning disabilities and a diagnosis for ADHD, he was on an Individualized Education Plan ("IEP"). *Id.* at ¶ 17.

While at Berryhill, D.S.'s stunted growth unfortunately made him a target of repeated bullying. *Id.* at ¶ 18. During his seventh-grade year, in 2016–2017, D.S. was forced into a closed locker; was hit in the face hard enough to cause a black eye by another student (and Defendant), "T.B."; was placed in in-school suspension with T.B., who struck D.S. in the head with a book and further threatened D.S.; and was subject to further verbal abuse. *Id.* at ¶¶ 19–20, 23, 25–26. Plaintiff and D.S. reported the bullying to school officials and Plaintiff spoke with officials numerous times, but the school did not follow through on a promised investigation or take other action to stop the bullying. *Id.* at ¶¶ 21–24.

In eighth grade, the bullying continued. *Id.* at 27. D.S. was pushed against a wall and punched in the stomach by one student and was slapped a number of times by another student, "M.P." *Id.* at ¶ 27–28. Around February 2019, student (and Defendant) Zach Arterberry simulated a forced sex act, "dry humping," on D.S. and unzipped his pants, exposed his crotch, and shoved it in D.S.'s face. *Id.* at ¶ 29. Several bullying occasions occurred in the presence of teacher (and Defendant) Megan Ennis, who did not intervene and instead, during the "dry humping" incident,

---

[3] The following recitation of facts derive from Plaintiff's Complaint (Doc. 2), which the Court, as it must on a motion to dismiss, accepts as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008).

merely took a picture of the event, laughing. *Id.* Then, in April 2019, Defendants Arterberry and T.B. taped D.S.'s mouth shut and taped his hands together behind his back, tied his shoelaces together, pulled his pants down, attempted to pull his underwear down, touched D.S.'s face with Arterberry's exposed penis, and called D.S. derogatory names. *Id.* at ¶¶ 29–34. All while a third student videoed the event and posted it on Snapchat, and while a fourth student held the door shut to prevent D.S.'s escape. *Id.* at ¶¶ 35–36. Ms. Ennis was again present for this altercation but said only "enough" and "pull your pants up." *Id.* at ¶¶ 33, 37. When this attack was over, D.S. fled to the hallway where he believed he would be on camera, but Ms. Ennis confronted him and ordered him to return to the classroom. *Id.* at ¶ 38. Ultimately, Ms. Ennis failed to report the incident to the principal and the next day, D.S.'s parents reported it. *Id.* at ¶ 39. The school suspended T.B. and Zach Arterberry for the few days that remained in the year. *Id.* at ¶ 41.

The school principal, Defendant Ronna Taylor, stated that she did not feel that D.S. was in an environment where he could learn in the classroom, so she made it clear to Ms. Ennis that D.S. would still receive a passing grade. *Id.* at ¶ 42. Since the number one priority of the school was to protect and to educate, the principal went on to apologize, saying "I am sorry that we have failed" D.S. *Id.* at ¶ 43. Following the bullying, D.S. attempted suicide and has been hospitalized several times for depression and suicidal ideations. *Id.* at ¶ 45.

On November 25, 2019, Plaintiff, as next friend of her son, D.S., filed suit. Doc. 2. She brought seven claims against eight defendants: the School District and its board of education; the three Administrators; a teacher; and two students. *Id.* Plaintiff sued for violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681 *et seq.* (Count One); violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 *et seq.* (Count Two); violation of equal protection

and substantive due process under 42 U.S.C. § 1983 (Count Three); negligent and intentional infliction of emotional distress (Count Four)[4]; battery (Count Five); negligent hiring and supervision (Count Six); and punitive damages (Count Seven). Doc. 2.

The School District and its Administrators filed a partial answer and their respective motions to dismiss. Docs. 12–14. Plaintiff timely responded to each motion to dismiss (Docs. 19, 20) and the School District and Administrators replied (Docs. 21, 22).

## **STANDARD**

The federal rules require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions. *See id.* Mere "labels and conclusions" or "formulaic recitation[s] of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

---

[4] Plaintiff's Count Four is actually two state law claims. "Oklahoma courts say that negligent infliction of emotional distress is not an independent tort but is in effect the tort of negligence." *Wilson v. Muckala*, 303 F.3d 1207, 1213 (10th Cir. 2002). Oklahoma courts also recognize the "tort of intentional infliction of emotional distress, also known as the tort of outrage." *Computer Pubs. Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002).

**DISCUSSION**

1. **School District**

Defendant School District, in its motion to dismiss, makes four arguments. First, it argues that the Board of Education should be dismissed as a party because it is not a separate legal entity under Oklahoma law. Doc. 13, at 2, 5–6. Second, it argues the Court lacks subject matter jurisdiction to hear Plaintiff's claims under the ADA and § 504 because the Plaintiff has failed to exhaust her administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq. Id.* at 2, 6–11. Third, it contends that the intentional infliction of emotional distress claim should be dismissed because a governmental entity cannot be held liable under the Oklahoma Governmental Tort Claims Act ("GTCA") for torts that cannot be committed by an employee acting in good faith. *Id.* at 3, 12–13. Fourth and last, it argues the Plaintiff's claim for punitive damages fails because such damages are not available against the School District under either federal or Oklahoma law. *Id.* at 3–4, 13–15. Overall, Defendant School District seeks dismissal of all claims against the Board of Education, Plaintiff's Count Two (ADA and § 504), Count Four (intentional infliction of emotional distress), and Count Seven (punitive damages).[5]

Plaintiff concedes to most of Defendant School District's arguments. *See* Doc. 19, at 2. Plaintiff concedes that the School District's Board of Education should be dismissed and that the intentional infliction of emotional distress claim should be dismissed against the School District. *Id.* Plaintiff also concedes that punitive damages are not available against the School District for

---

[5] The School District does not move to dismiss Count One for violation of Title IX, Count Three for violation of 42 U.S.C. § 1983, Count Four (negligent infliction of emotional distress), or Count Six for negligent training and supervision. *See* Doc. 12. The Court will construe Plaintiff's allegation of negligent infliction of emotional distress against the School District within Count Four—which is really a negligence claim. *See supra* n.4. Finally, Plaintiff's Count Five for battery is brought against the two student defendants, not the School District.

her state tort claims but asserts that punitive damages are available against the School District for her federal claims. *Id.* at 2, 8–9.

The sole issues remaining for the Court's examination are Count Two for violation of Title II of the ADA and § 504, and the availability of punitive damages against the School District under federal law.

**A.      Administrative Exhaustion — Title II of the ADA, § 504, and the IDEA**

Defendant School District argues this Court lacks subject matter jurisdiction to hear Plaintiff's Title II of the ADA and § 504 claims because Plaintiff was required first to exhaust her administrative remedies under the IDEA. Doc. 13, at 6.  Plaintiff disagrees. *See* Docs. 2, 19. Whether Plaintiff was required to exhaust her administrative remedies under the IDEA is controlled by two recent Supreme Court cases, *Fry v. Napoleon Community Schools*, 580 U.S. 154 (2017) and *Luna Perez v. Sturgis Public Schools*, 598 U.S. 142 (2023). The former case asks whether the gravamen of the complaint alleges a denial of a free appropriate public education, and the latter case asks whether the relief sought is of the type the IDEA offers. If the answer to both is yes, administrative exhaustion under the IDEA is required. The Court will address each case, respectively.

**i.      *Fry*: IDEA and the Denial of a Free Appropriate Public Education**

The parties' dispute largely revolves around the breadth of the Supreme Court's 2017 decision in *Fry v. Napoleon Community Schools*, 580 U.S. 154 (2017). Defendant School District claims *Fry* is dispositive and requires dismissal since the gravamen of Plaintiff's complaint is that D.S. was denied a free appropriate public education, thus triggering IDEA's administrative exhaustion requirement. Doc. 13, at 6–11. Although Plaintiff met with or spoke to school directors many times regarding the bullying D.S. experienced, *see* Doc. 2 at ¶¶ 21, 24, 28, 39, 42, she does

not describe any administrative proceedings with the school district. Plaintiff disagrees. *See* Doc. 19. Plaintiff argues the School District has "likely overstated the benefit and holdings of [*Fry*] as it applies to this one." *Id.* at 3. Instead, Plaintiff claims that she was not required to exhaust administrative remedies for three reasons: "the abuse is entirely in the past as a result of D.S. being home schooled and [Defendant] Arterberry graduating from high school;" "seeking compensatory damages through the administrative process would be futile;" and she "does not seek non-discriminatory access to the school in this litigation." Doc. 2 at ¶¶ 65–67. For the reasons detailed below, the Court finds that Defendant School District's *Fry* argument is well-taken.

In *Fry*, a child with severe cerebral palsy sought permission from the public school she attended to have her service dog join her in school. 580 U.S. 154, 161–162 (2017). The school refused her request and her parents sued, alleging violations of Title II of the ADA and § 504 of the Rehabilitation Act. *Id.* at 163–164. The district court granted the school district's motion to dismiss, concluding that the Fry's were required to first exhaust the IDEA's administrative procedures. *Id.* at 164. A divided panel on the Sixth Circuit Court of Appeals affirmed. *Id.* The Supreme Court granted certiorari to address confusion among the Courts of Appeals as to the scope of IDEA's exhaustion requirement, § 1415(*l*). *Id.*

*Fry* began with a "welcome to—and apology[y] for—the acronymic world of federal legislation" regarding education and discrimination. *Id.* at 158. It explained that the "IDEA offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Id.* The IDEA defines a FAPE as "special education and related services"—both "instruction" tailored to meet a child's "unique needs" and sufficient "supportive services" to permit the child to benefit from that instruction. *See id.*; 20 U.S.C. §§ 1401 (9), (26), (29). The

7

IDEA's "primary vehicle" for providing a FAPE is a personalized plan called an "individualized education program" ("IEP") for each qualifying child. *Fry*, 580 U.S. at 158; *see* § 1414(d). Additionally, "[t]o ensure that children with disabilities were being afforded all of the educational benefits of the [IDEA], Congress mandated . . . a host of procedural safeguards[] so that parents and advocates could participate fully in the design and implementation of [a] child's FAPE." *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1064 (10th Cir. 2002) (citation omitted).

Procedural safeguards within the IDEA include various notice requirements, "an opportunity to present complaints with respect to any matter relating to the child's identification, evaluation, or educational placement," the opportunity for an impartial due process hearing on any such complaints, and the right to appeal any finding or decision reached in that due process hearing. *Id.* (citing § 1415). "As part of the bargaining of providing children with educational rights and parents with procedural safeguards to protect those rights, Congress required that parents turn first to the statute's administrative framework . . . [and] educational professionals, as opposed to courts, to remedy disputes over a child's education." *Id.* at 1064–65. Thus, the IDEA's administrative exhaustion requirement became law:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter*.

20 U.S.C. § 1415(*l*) (emphasis added).

The IDEA interacts with two other relevant statutes: Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.*, and § 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.*, "which cover both adults and children with disabilities, in both public schools and other settings." *Fry*, 580 U.S. at

8

159. These statutes "aim to root out disability-based discrimination, enabling each covered person . . . to participate equally to all others in public facilities and federally funded programs." *Id.* at 170. "In short, the IDEA guarantees individually tailored educational services, while Title II and § 504 promise non-discriminatory access to public institutions." *Id.* at 170–71. Importantly, Title II and § 504 do not have comparable exhaustion requirements to the IDEA. *See id.* at 161. Equally important, however, the only thing "a plaintiff must seek in order to trigger [the IDEA's] exhaustion rule[] is relief for the denial of a FAPE." *Id.* at 166; *see* 20 U.S.C. § 1415(*l*). "If a lawsuit charges such a denial, the plaintiff cannot escape [the exhaustion requirement] merely by bringing her suit under a statute other than the IDEA—such as [§ 504]." *Fry,* 580 U.S. at 168. In sum, the IDEA's exhaustion requirement is triggered, as the Supreme Court held in *Fry*, when the gravamen of the plaintiff's complaint alleges the denial of a FAPE. *Id.* at 158; *but see infra* Section A.ii.

To determine whether the IDEA's exhaustion requirement has been triggered, the Court must examine the plaintiff's complaint to see whether she "seeks relief for the denial of an appropriate education." *Id.* at 169. This examination should "consider substance, not surface" and look to the "gravamen" of the complaint, "even if not phrased or framed in precisely that way." *Id.* at 169–70. In *Fry*, the Supreme Court offered two "clue[s] to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination." *Id.* at 171.

> First, could the Plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes . . . there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why

9

only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.*

Plaintiff pleads numerous times throughout her complaint that D.S. was denied a FAPE. *See, e.g.*, Doc. 2, at ¶ 42 ("Taylor, a school principal, said that she did not feel that D.S. was in an environment where he could learn in [the] classroom, so she had made it clear to the teacher that D.S. would receive a passing grade."); ¶ 52 ("The bullying suffered by D.S. was so severe, pervasive, and objectively offensive that [it] deprived him of the educational benefits provided by the school."); ¶ 89 ("The inaction of the school and its personnel in response to the repeated incidents of bullying has denied D.S. an education . . . ."); § 117 ("As a result of the continued bullying and mistreatment, D.S. has suffered damages, including . . . loss of educational opportunity.").

Plaintiff directs the Court to *Padilla v. School District No. 1*, 233 F.3d 1268, 1274 (10th Cir. 2000), for the proposition that exhaustion is not required when a plaintiff has alleged injuries that could not be redressed by the IDEA. Doc. 19, at 5–6. *Padilla* involved a minor who suffered a skull fracture and exacerbation of a seizure disorder when she fell over while restrained in a stroller in a windowless closet without supervision. *Padilla*, 233 F.3d at 1271. The plaintiff sought "damages solely to redress the fractured skill and other physical injuries she suffered" because of the alleged ADA violations. *Id.* at 1274. "Under these narrow circumstances," the Tenth Circuit "fail[ed] to see how the IDEA's administrative remedies, oriented as they are to providing prospective educational benefits, could possibly begin to assuage Plaintiff's severe physical, and completely non-educational, injuries." *Id.* Here, Plaintiff's repeated allegations of D.S.'s educational harm distinguishes her case—factually—from the "completely non-educational" harm suffered in *Padilla*.

10

Rather, the Court finds the Tenth Circuit's decision in *Carroll v. Lawton Independent School District No. 8*, 805 F.3d 1222 (10th Cir. 2015), more instructive. There, a third-grade girl with autism was injured at school when her teacher "'punished' [her] by pulling her undergarments so hard into a 'wedgie' that [her] underwear was torn" and "placed [her] in a dark closet" several times. *Id.* at 1225. The girl suffered both emotional and academic damage from these events, after which her parents sued under Title II, § 504, § 1983, and numerous state tort theories, including negligence, intentional infliction of emotional distress, assault, and battery. *Id.* The parents argued exhaustion was unnecessary because they alleged non-educational injuries to their daughter. *Id.* at 1226.

The Tenth Circuit disagreed. It explained that "[t]hough not all of the injuries alleged in the complaint are educational, the Carrolls [] 'alleged injuries that could be redressed to [some] degree by the IDEA's administrative procedures and remedies." *Id.* at 1228. (quoting *Padilla*, 233 F.3d at 1274). Thus, they sought "relief that is also available under the IDEA." *Id.* The court distinguished the case from *Padilla*, explaining that it was "not a case involving *solely* 'severe physical, and completely non-educational, injuries' for which the IDEA can offer no remedy." *Id.* (quoting *Padilla*, 233 F.3d at 1274) (emphasis in original). Since the parents' allegations included allegations of educational injuries, the case did not qualify for "the narrow circumstances that . . . [make] exhaustion unnecessary" and the school district had to "be given an initial opportunity to ascertain and alleviate the alleged problem" through the administrative process set out in the IDEA." *Id.* (internal quotation marks omitted).

As in *Carroll*, Plaintiff alleges both educational and non-educational injuries. Since she does not allege solely non-educational injuries like in *Padilla*, the exhaustion requirement in this regard is not circumvented. In sum, the gravamen of Plaintiff's complaint alleges the denial of a

11

FAPE. Precedent up to and including *Fry* would require Plaintiff to first exhaust her administrative remedies. However, the inquiry does not end at *Fry* because the IDEA's exhaustion requirement is necessary only when the Plaintiff is seeking relief that is also available under the IDEA.

      **ii.**      ***Luna Perez* and Available Relief**

In *Fry*, the Supreme Court held that § 1415(l)'s exhaustion requirement does not apply unless the plaintiff "seeks relief for the denial of" a free appropriate public education "because that is the only 'relief'" IDEA's administrative process can supply. *Fry*, 580 U.S. 154, 165, 168 (2017). However, the Court left unresolved an analogous but different question "about the meaning of § 1415(*l*): Is exhaustion required when the plaintiff complains of the denial of a FAPE, but the specific remedy she requests—[money damages]—is not one that an IDEA hearing officer may award?" *Id.* at 165 n.4.

The Supreme Court, earlier this year, answered this question in *Luna Perez v. Sturgis Public Schools*, 598 U.S. 142 (2023).[6] In *Luna Perez*, plaintiff alleged that the school had failed its duties under the IDEA and other laws by providing Mr. Perez—who is deaf—unqualified or habitually absent sign language aids. *Id.* at 145. Mr. Perez's administrative complaint settled, and he received all the forward-looking equitable relief he sought. *Id.* He then filed a lawsuit in federal district court under the ADA seeking backward-looking relief through compensatory damages. *Id.* The district court dismissed the suit, agreeing with the defendant that IDEA's administrative procedures must have first been exhausted. *Id.* The Sixth Circuit affirmed because it was bound by circuit precedent dictating that a "lawsuit that seeks relief for the denial of an appropriate education is subject to section 1415(l), even if it requests a remedy the IDEA does not allow."

---

[6] On December 4, 2023, the Court ordered the parties to file supplemental briefing addressing *Luna Perez* and its impact on the administrative exhaustion issue in this case. Doc. 46. The parties timely filed the supplemental briefing. Docs. 48, 49.

*Perez v. Sturgis Pub. Sch.*, 3 F.4th 236, 241 (6th Cir. 2021). The Sixth Circuit pointed out that most circuits agree with this proposition. *Id.* Indeed, as the Defendant School District in this case points out, the Tenth Circuit has at least twice reiterated that "available relief" under the IDEA means "'relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers.'" *Cudjoe*, 297 F.3d at 1066 (quoting *Padilla*, 233 F.3d at 1274)). The Tenth Circuit has held that "the IDEA's exhaustion requirement will not be excused simply because a plaintiff requests damages, which are ordinarily unavailable in administrative hearings held pursuant to the statute . . . ." *Id.* "This approach of focusing on whether there is any relief available under the IDEA to remedy the injury, as opposed to the particular relief sought by the plaintiff, is appropriate to ensure that the IDEA process is not short-circuited by a rush to court seeking damages." *Id.* at 1067 (internal quotation marks omitted).

The Supreme Court disagrees with this approach. The Supreme Court, in *Luna Perez*, unanimously held that a plaintiff seeking only compensatory damages for an alleged ADA violation premised on a FAPE denial was not required to exhaust IDEA's administrative processes because the relief sought (damages) was not something IDEA can provide. *Luna Perez*, 598 U.S. at 150. The Court reached this holding because (1) "the statute's administrative exhaustion requirement applies *only* to suits that 'seek relief also available under' IDEA; and (2) compensatory damages is "a remedy everyone . . . agrees IDEA cannot supply." *Id.* at 147 (cleaned up). Overall, the condition that the "relief [be] also available under IDEA" is a condition that is simply not met "where a plaintiff brings a suit under another federal law for compensatory damages—a form of relief everyone agrees IDEA does not provide." *Id.* at 147–48.

No court in this circuit has yet to meaningfully apply *Luna Perez*, especially the Tenth Circuit Court of Appeals. But as the Fifth Circuit has succinctly put together, the current state of law between the IDEA, *Fry*, and *Luna Perez* is as follows:

> in a suit against a public school for alleged violations of the ADA or other similar anti-discrimination statutes, the court should first assess whether the gravamen of the complaint concerns the denial of a FAPE or, instead, is based on disability discrimination. If the complaint does not concern the denial of a FAPE, the plaintiff need not go[] through the IDEA's administrative hurdles. On the other hand, if the complaint *is* predicated on a FAPE denial, then the court must then ask what relief is sought. If the relief sought is not one that the IDEA can provide (such as compensatory damages), then, again, the plaintiff need not go through the IDEA's administrative hurdles. But if the relief sought is of the type that the IDEA offers, then the plaintiff must fully exhaust the administrative processes as required by § 1415(*l*).

*Lartigue v. Northside Indep. Sch. Dist.*, 86 F.4th 689, 693 (5th Cir. 2023) (citations omitted). Here, the Court has concluded—and agreed with Defendant School District—that the gravamen of Plaintiff's complaint concerns the denial of a FAPE. Dispositively, however, the only relief Plaintiff requests is backwards-looking compensatory and punitive damages. *See* Doc. 2, at ¶¶ 66, 118–20. She does not seek any sort of equitable relief the IDEA provides and, as "everyone agrees," money damages are a remedy the "IDEA does not provide." *Luna Perez*, 598 U.S. at 147–148.[7] Therefore, under *Luna Perez*, Plaintiff is not required to first exhaust administrative remedies under the IDEA because the IDEA cannot provide the relief Plaintiff seeks. *Id.* at 150; *see Lartigue*, 86 F.4th at 693–94.

Overall, Plaintiff is not required to exhaust administrative remedies pursuant to § 1415(*l*). While the gravamen of Plaintiff's complaint alleges the denial of a FAPE (consistent with *Fry*), she seeks relief that the IDEA simply cannot provide (damages).

---

[7] The *Luna Perez* Court also stated that "a plaintiff who files an ADA action seeking both damages and the sort of equitable relief IDEA provides may find his request for equitable relief barred or deferred if he has yet to exhaust § 1415(f) and (g)." *Luna Perez*, 598 U.S. at 150. This is not the situation here since Plaintiff seeks only money damages and not any equitable relief.

Although the Tenth Circuit has held this does not excuse administrative exhaustion, *see Carroll*, 805 F.3d at 1227, the Supreme Court in *Luna Perez* says it does. This Court has subject matter jurisdiction over Plaintiff's ADA and § 504 claims, which may proceed against Defendant School District.[8]

### B.     Availability of Punitive Damages Against the School District

The Defendant School District claims that punitive damages are not available against it under state tort law (Count Six), Title IX (Count One), Title II and § 504 (Count Two), or § 1983 (Count Three). Doc. 13, at 13–15. Plaintiff concedes that punitive damages are not available against the Defendant School District under state law. Doc. 19, at 2. She fails to respond to the Defendant School District's argument regarding Title IX, Title II and § 504 but argues that punitive damages are available under § 1983. *Id.* at 8. The Court will discuss each in turn.

"While there appears to be no binding authority as to the availability of punitive damages for a Title IX claim, the U.S. Supreme Court has concluded punitive damages are not available in a claim under Title VI of the Civil Rights Act of 1964." *Roof v. New Castle Pub. Sch.*, 2015 WL 1040373, at *5 (W.D. Okla. Mar. 10, 2015). The "Court has generally interpreted Title IX consistently with Title VI, and the rationale for its determination . . . appears equally applicable to a Title IX case." *Id.* Thus, this Court chooses to join the Western District of Oklahoma, among other courts, in concluding that punitive damages are not available under Title IX. *See, e.g., Najera v. Indep. Sch. Dist. of Stroud*, 60 F. Supp. 3d 1202, 1208 (W.D. Okla. 2014) (citing *Mercer v. Duke Univ.*, 401 F.3d 199, 202 (4th Cir. 2005)).

---

[8] Defendant School District only moves to dismiss the ADA and § 504 claims on the basis of administrative exhaustion under the IDEA. Doc. 13. It does not move to dismiss the ADA and § 504 claims on the basis that the complaint fails to plead sufficient facts of an ADA or § 504 claim, nor does it make any arguments in the alternative. Therefore, the Court only discusses the administrative exhaustion argument raised by Defendant.

Punitive damages are likewise unavailable in an action brought under Title II and § 504. In *Barnes v. Gorman*, the Supreme Court decided "whether punitive damages may be awarded in a private cause of action brought under § 202 of the [ADA], and § 504 of the Rehabilitation Act . . . ." 536 U.S. 181, 183 (2002). The Court held that since "punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act." *Id.* at 189.

Lastly, punitive damages against the School District are likewise unavailable to Plaintiff under her § 1983 claim. "[A] municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Principals of municipal liability apply to public schools. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010). Thus, the School District is immune from punitive damages under Plaintiff's § 1983 claim.

## II. Administrator Claims

The Defendant Administrators move to dismiss all claims brought against them in their official capacities as employees of the School District, as well as claims brought against them in their individual capacities regarding Title IX, Title II and § 504, negligence, and negligent hiring and supervision. Doc. 14. The Administrators do not move to dismiss claims regarding § 1983 or intentional infliction of emotional distress in their individual capacities, nor do they request dismissal of "Count Seven" for punitive damages.[9] *See* Doc 20; Doc. 22, at 2 n.3.

---

[9] "A plea for punitive damages is generally considered to be an element of recovery of the underlying cause of action; it does not constitute a separate cause of action." *Rodebush v. Okla. Nursing Homes, Ltd.*, 867 P.2d 1241, 1247 (Okla. 1993).

16

Plaintiff, again, concedes to most of Defendant Administrator's arguments. She concedes that the Title IX and Title II and § 504 claims should be dismissed against the Administrators in their official capacity. Doc. 20, at 2. She also concedes that the Title IX, Title II and § 504, negligence, and negligent hiring and supervision claims should be dismissed against the Administrators in their individual capacities. *Id.* Thus, the only matter relating to the Administrators that requires the Court's examination is whether the Administrators should be dismissed from the § 1983, negligence, and negligent hiring and supervision claims in their official capacities. *See id.*; Doc. 22, at 2.

Official capacity suits "impose[] liability on the entity that [the individual defendant] represents." *Couser v. Gay*, 959 F.3d 1018, 1023 (10th Cir. 2020) (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Such claims should be treated as claims against the entity. *Sawyers v. Norton*, 962 F.3d 1270, 1278 n.4 (10th Cir. 2020) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Thus, "[i]f a governmental entity is already a defendant in a lawsuit, then any official capacity claim against its employees are redundant and may be dismissed." *Moore v. Tulsa*, 55 F. Supp. 3d 1337, 1349 (N.D. Okla. 2014) (internal quotation marks omitted). *See also Storie v. Indep. Sch. Dist. No. 13*, 834 F. Supp. 2d 1305, 1307–08 (E. D. Okla. 2011). Dismissal is permissive and a matter of judicial economy. *Busby v. City of Tulsa*, 2012 WL 1867167, at *5 (N.D. Okla. May 22, 2012) (citing *Ebonie S. v. Pueblo Sch. Dist. 60*, 819 F. Supp. 2d 1179, 1185 (D. Colo. 2011); *Smith v. Bd. of Cnty. Comm'rs*, 216 F. Supp. 2d 1209, 1219 (D. Kan. 2002)).

Plaintiff argues without authority that dismissal of claims against the Administrators in their official capacity "is premature absent a stipulation from the school district that any and all negligent acts of the [Administrators] were performed in their official capacity and within the scope of their employment." Doc. 20, at 3–4. In her view, "it is unknown . . . [whether] the

principals were at all times acting within the scope of their employment." *Id.* at 4. The Court fails to see the necessity of such a stipulation.

"A government employee acting within the scope of employment is relieved from private (individual) liability for tortious conduct, but when an employee acts outside the scope of employment the political subdivision is relieved from liability." *Pellegrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents of State*, 63 P.3d 535, 537 (Okla. 2003). "The concept of scope of employment is thus tied to whether the employee or the governmental entity may be liable for a particular act." *Id.* Plaintiff agrees dismissal is proper for the negligence and negligent hiring and supervision claims she brought against the Administrators in their individual capacities. Doc. 20, at 2. If she believed the Administrators have acted outside the scope of their employment, the proper course of action for Plaintiff would have been to maintain her individual capacity claims against them. As it is, she presents nothing to sway the Court from dismissing the redundant official capacity claims as a matter of judicial economy and efficiency. The official capacity claims are dismissed with prejudice.[10] *See Romero v. Storey*, 2010 WL 11619180, at *2 (D. N.M. Sept. 17, 2010) (Dismissing official capacity claims with prejudice because "the majority of cases which have dealt with the issue of redundancy in § 1983 lawsuits have held that the appropriate remedy is, in fact, dismissal of the official capacity claim.") (compiling cases).

## CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion of the School District to Dismiss All Claims against the Board of Education and Claims against the School District under the ADA, § 504, the State Law Tort Claim for Intentional Infliction of Emotional Distress, and Punitive Damages (Doc. 13) is **GRANTED IN PART AND DENIED IN PART**. All claims against the

---

[10] The dismissal of the official capacity claims with prejudice for failure to state a claim does not affect the claims against the School District.

Board of Education are **DISMISSED WITHOUT PREJUDICE**. Count Four (intentional infliction of emotional distress) and "Count Seven" against the School District are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the Motion of Defendants Ronna Taylor, James Fox, and Brian Hailey to Dismiss All Claims against Them in their Official Capacities [and] the Claims against Them in their Individual Capacities under Title IX, the ADA, and § 504, and the State Tort Claims for Negligence and Negligent Training and Supervision (Doc. 14) is **GRANTED**. All claims against Taylor, Fox, and Hailey in their official capacities are **DISMISSED WITH PREJUDICE**. Count One, Count Two, Count Four for negligence (but not intentional infliction of emotional distress), and Count Six against Taylor, Fox, and Hailey in their individual capacities are **DISMISSED WITHOUT PREJUDICE**.

To summarize, following entry of this order, the status of each claim is as follows:

- Count One for violation of Title IX, 20 U.S.C. §§ 1681 *et seq.*, remains pending against the School District.

- Count Two for violation of Title II of the ADA and § 504 against the School District remains pending against the School District.

- Count Three for violation of 42 U.S.C. § 1983 remains pending against the School District as well as Defendants Megan Ennis, Ronna Taylor, James Fox, and Brian Hailey individually.

- Count Four for negligent infliction of emotional distress (negligence) remains pending against Defendant School District.

- Count Four for intentional infliction of emotional distress remains pending against Defendants Megan Ennis, Ronna Taylor, James Fox, Brian Hailey, Zach Arterberry and Levi Bradley, as next friend of T.B.

- Count Five for battery remains pending against Defendants Zach Arterberry and Levi Bradley, as next friend of T.B.

- Count Six for negligent training and supervision remains pending against the School District.

- The "Count Seven" section of Plaintiff's Complaint is not a freestanding claim. Plaintiff's prayer for punitive damages based on her other theories of liability is stricken insofar as it relates to the School District and remains as pled insofar as it relates to the individual Defendants.

**IT IS SO ORDERED.**

                                                          UNITED STATES DISTRICT JUDGE